UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| TOM GONZALES,<br><br>   Plaintiff,<br><br>vs.<br><br>SHOTGUN NEVADA INVESTMENTS, LLC et al.,<br><br>   Defendants. | ) ) ) ) ) ) ) ) ) ) ) | 2:13-cv-00931-RCJ-VPC |
| TOM GONZALES,<br><br>   Plaintiff,<br><br>vs.<br><br>DESERT LAND, LLC et al.,<br><br>   Defendants. | ) ) ) ) ) ) ) ) ) ) ) | 2:15-cv-00915-RCJ-VPC<br><br>**ORDER** |

These consolidated cases arises out of the alleged breach of a settlement agreement that was part of a confirmation plan in a Chapter 11 bankruptcy action.

## I. FACTS AND PROCEDURAL HISTORY

Case No. 2:13-cv-931 is the Lead Case and the second action in this Court by Plaintiff Tom Gonzales concerning his entitlement to a fee under a Confirmation Order the undersigned entered years ago while sitting as a bankruptcy judge.

A.     The Previous Case

On December 7, 2000, Plaintiff loaned $41.5 million to Desert Land, LLC and Desert Oasis Apartments, LLC to finance their acquisition and/or development of land ("Parcel A") in Las Vegas, Nevada. The loan was secured by a deed of trust. On May 31, 2002, Desert Land and Desert Oasis Apartments, as well as Desert Ranch, LLC (collectively, the "Desert Entities"), each filed for bankruptcy, and the undersigned jointly administered those three bankruptcies while sitting as a bankruptcy judge. The court confirmed the second amended plan, and the Confirmation Order included a finding that a settlement had been reached under which Gonzales would extinguish his note and reconvey his deed of trust, Gonzales and another party would convey their fractional interests in Parcel A to Desert Land so that Desert Land would own 100% of Parcel A, Gonzales would receive Desert Ranch's 65% in interest in another property, and Gonzales would receive $10 million if Parcel A were sold or transferred after 90 days (the "Parcel Transfer Fee"). Gonzales appealed the Confirmation Order, and the Bankruptcy Appellate Panel affirmed, except as to a provision subordinating Gonzales's interest in the Parcel Transfer Fee to up to $45 million in financing obtained by the Desert Entities.

In 2011, Gonzales sued Desert Land, Desert Oasis Apartments, Desert Oasis Investments, LLC, Specialty Trust, Specialty Strategic Financing Fund, LP, Eagle Mortgage Co., and Wells Fargo (as trustee for a mortgage-backed security) in state court for: (1) declaratory judgment that a transfer of Parcel A had occurred entitling him to the Parcel Transfer Fee; (2) declaratory judgment that the lender defendants in that action knew of the bankruptcy proceedings and the requirement of the Parcel Transfer Fee; (3) breach of contract (for breach of the Confirmation Order); (4) breach of the implied covenant of good faith and fair dealing (same); (5) judicial foreclosure against Parcel A under Nevada law; and (6) injunctive relief. Defendants removed that case to the Bankruptcy Court. The Bankruptcy Court recommended withdrawal of the reference because the undersigned had issued the underlying Confirmation Order while sitting as

a bankruptcy judge.  One or more parties so moved, and the Court granted the motion.  In that case, *Gonzales v. Desert Land, LLC*, 3:11-cv-613, the Court dismissed the second and fifth causes of action and later granted certain defendants' counter-motion for summary judgment as against the remaining claims.  Plaintiff asked the Court to reconsider and to clarify which, if any, of its claims remained, and defendants asked the Court to certify its summary judgment order under Rule 54(b) and to enter judgment in their favor on all claims.  The Court denied the motion to reconsider, clarified that it had intended to rule on all claims, and certified the summary judgment order for immediate appeal.  Defendants submitted a proposed judgment, which the Court signed, and Plaintiff asked the Court to enjoin defendants from further encumbering Parcel A with loans or mechanic's liens until the Court of Appeals ruled, a motion the Court denied.  The Court of Appeals affirmed, ruling that the Parcel Transfer Fee had not been triggered based on the allegations in that case, and that Plaintiff had no lien against Parcel A.

### B. The Lead Case

In the Lead Case, Case No. 2:13-cv-931, also removed from state court, Plaintiff recounts the Confirmation Order and the Parcel Transfer Fee. (*See* Compl. ¶¶ 10–14, ECF No. 1, at 11 in Case No. 2:13-cv-931).  Plaintiff also recounts the history of the previous case. (*See id.* ¶¶ 17–21).  Plaintiff alleges that Defendant Shotgun Nevada Investments, LLC ("Shotgun") began making loans to the Desert Entities for the development of Parcel A between 2012 and January 2013 despite its awareness of the Confirmation Order and Parcel A transfer fee provision therein. (*See id.* ¶¶ 22–23).  Plaintiff sued Shotgun, Shotgun Creek Las Vegas, LLC, Shotgun Creek Investments, LLC, and Wayne M. Perry for intentional interference with contract, intentional interference with prospective economic advantage, and unjust enrichment based upon their having provided financing to the Desert Entities to develop Parcel A.  Defendants removed and moved for summary judgment, arguing that the preclusion of certain issues decided in the '613 Case necessarily prevented Plaintiffs from prevailing in the present case.  The Court granted

1  that motion as a motion to dismiss, with leave to amend.

2  Plaintiff filed the Amended Complaint ("AC"). (*See* Am. Compl., ECF No. 28 in Case No. 2:13-cv-931).  Plaintiff alleges that the Confirmation Order permitted Parcel A to be used as collateral for up to $25,000,000 in mortgages of Parcel A itself or as collateral for a mortgage securing the purchase of real property subject to the FLT Option if the proceeds were used only for the purchase of that real property, but that any encumbrance of Parcel A outside of these parameters would trigger the Parcel Transfer Fee. (*See id.* ¶¶ 15–16).  Various Shotgun entities made additional loans to the Desert Entities in 2012 and 2013 "related to the development of Parcel A." (*Id.* ¶¶ 25–26).  Multiple Shotgun entities have also invested in SkyVue Las Vegas, LLC ("SkyVue"), the company that owns the entities that own Parcel A. (*Id.* ¶ 27).  Plaintiff alleges that the reason Perry, the principal of the Shotgun entities, did not document his $10 million investment was to "avoid evidence of a transfer," and thus the triggering of the Parcel Transfer Fee. (*See id.* ¶ 29).

14  Defendants moved for summary judgment, and Plaintiff moved to compel discovery.  The Court struck the conspiracy and declaratory judgment claims from the AC, because Plaintiff had no leave to add them.  The Court otherwise denied the motion for summary judgment and granted the motion to compel discovery, although the Court noted that the intentional interference with prospective economic advantage claim (but not the intentional interference with contractual relations claim) was legally insufficient.  Defendants moved for summary judgment after further discovery and filed a motion in limine.  The Court denied both motions as well as a motion to reconsider but granted a motion to strike the untimely jury demand.

22  **C.   The Member Case**

23  In the Member Case, Case No. 2:15-cv-915, Plaintiff sued the Desert Entities, SkyVue Las Vegas, LLC, Howard Bulloch, and David Gaffin variously in this Court for breach of contract, breach of the covenant of good faith and fair dealing, and conspiracy, making a timely

jury demand. The Court asked the parties to show cause why both cases should not therefore be tried to a jury. After a hearing, the Court ruled that the '931 Case will be tried to the Court but the '915 Case will simultaneously be tried to a jury.

## II. DISCUSSION

Plaintiff has moved to disqualify Mark A. Hutchison or any member of the firm of Hutchison & Steffen, LLC from representing Desert Land, LLC; Desert Oasis Apartments, LLC; Desert Oasis Investments, LLC; SkyVue Las Vegas, LLC; Howard Bulloch; and David Gaffin (collectively, "Defendants").

### A. Attorney Kistler

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Nev. R. Prof. Cond. 1.9(a).

Plaintiff argues that because Hutchison & Steffen attorney Sid Kistler represented him when Kistler worked at Gordon & Silver, Kistler is disqualified from representing Defendants against him in the present matter under Rule 1.9(a). Kistler admits to having represented Gonzales in certain non-bankruptcy litigation but nothing substantially related to the present matter. Gonzales, however, recalls that Kistler "had a primary role" in his representation at Gordon & Silver, which included the Desert Entities' bankruptcy cases, including representation of Plaintiff at his deposition in those cases. The transcript of the deposition shows that Kistler understood that the deposition related to a contested matter in the bankruptcy case and that he understood the difference between a garden-variety deposition and an examination under Bankruptcy Rule 2004 well enough to argue the point with opposing counsel. One of Kistler's many objections at the deposition was that a certain question implicated attorney–client privileged discussions, i.e., "that scenario has been the subject of attorney–client privileged

discussions," and he advised Gonzales not to answer for that reason. In other words, it is clear that Kistler had privileged information concerning Gonzales's representation relevant to the bankruptcy case, and that he did not just "parachute in" for the deposition, to use his words. And Kistler himself asked Gonzales many questions, often referring to exhibits, that indicated his in-depth knowledge of the matter at hand. Plaintiff points out that even the limited Gordon & Silver billings available to him indicate that Kistler did work for Plaintiff related to the Desert Entity bankruptcy cases in addition to representing him at his deposition, including attending meetings on how to proceed "on all matters." Indeed, when Gordon & Silver subsequently sued Plaintiff for fees concerning the firm's representation of him in the Desert Entities' bankruptcy cases, the firm listed Kistler as a witness who "has knowledge of the facts and circumstances surrounding the Complaint . . . to include but not limited to the services provided . . . ." The relevant evidence is adduced.

      The Court is satisfied that Attorney Kistler represented Plaintiff while at Gordon & Silver on a matter substantially related to the present cases. Plaintiff's and Defendants' interests are materially adverse in the present cases, and it appears undisputed that Plaintiff has never given written consent to Kistler's representation of Defendants in the present cases. Kistler is therefore disqualified from representing Defendants against Plaintiff in the present cases under Rule 1.9(a).

      **B.    Attorney Moody**

      Plaintiff argues that because Hutchison & Steffen attorney Todd Moody represented him when Moody worked at Ellsworth Moody & Binnion, Moody is also disqualified from representing Defendants against him in the present matter under Rule 1.9(a). Plaintiff notes that his attorney against Gordon & Silver in the fee dispute engaged Moody to obtain Plaintiff's case files from Gordon & Silver. The Court cannot find that Moody represented Plaintiff while at Ellsworth Moody & Binnion on a matter substantially related to the present cases without more. The fee dispute between Plaintiff and Gordon & Silver is not substantially related to the dispute

between Plaintiff and the Desert Entities in fact or law.  The substance of the underlying bankruptcies had no relation to the limited task of obtaining the case files.

### C. Hutchison & Steffan

> When a lawyer becomes associated with a firm, no lawyer associated in the firm shall knowingly represent a person in a matter in which that lawyer is disqualified under Rule 1.9 unless:
>
> (1) The personally disqualified lawyer did not have a substantial role in or primary responsibility for the matter that causes the disqualification under Rule 1.9;
>
> (2) The personally disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; *and*
>
> (3) Written notice is promptly given to any affected former client to enable it to ascertain compliance with the provisions of this Rule.

Nev. R. Prof. Cond. 1.10(e) (emphasis added).

Kistler is not currently listed as counsel of record for Defendants, but Attorneys Christian Orme and Robert Stewart of Hutchison & Steffan are.  Plaintiff argues that Kistler's conflict is imputed to all attorneys in the firm.  Under Rule 1.10(e), once Kistler joined Hutchison & Steffan, his conflicts of interest under Rule 1.9 became imputed to all attorneys in that firm unless Kistler did not have a substantial role in or primary responsibility for the Desert Entities bankruptcy representation, Kistler was timely screened from any participation in the present matter and is to be apportioned no part of the fee, and Plaintiff was promptly given written notice so that he could evaluate a potential conflict under Rule 1.10(e). *See id.*

The evidence adduced shows that Kistler had a "substantial role" in Plaintiff's representation concerning the Desert Entities' bankruptcy cases, having represented him at a deposition in the bankruptcy case and attended meetings as to litigation strategy in those matters and others.  Although the Nevada Supreme Court has not defined "substantial role," Black's indicates that the word means "Of, relating to, or involving substance . . . [r]eal and not imaginary . . . [i]mportant, essential, and material . . . ." Black's Law Dictionary 1656 (10th ed.

1  2014). Kistler's representation of Plaintiff at the deposition in the Desert Entities bankruptcy
2  cases related to the substance of the case, was real, and was important, essential, and material to
3  Plaintiff's participation in that case. Although Kistler's role in representing Plaintiff in the
4  Desert Entities bankruptcy case was not "primary," it was "substantial." Nevada's rule, unlike
5  the rules in some other states, makes clear that "substantial" involvement is something less than
6  "primary," because either is enough. At least one other court interpreting the issue of
7  substantiality in this context has found the test to be satisfied based on representation as to a
8  single, important event in a matter's litigation plus attendance at strategy meetings with other
9  attorneys working on the case, as here. *See Roy D. Mercer, LLC v. Reynolds*, 292 P.2d 466,
10 469–73 (N.M. 2012) (affirming imputation of a conflict where the personally conflicted attorney
11 had briefed a motion to remand and participated in strategy meetings). Nevada's Standing
12 Committee on Ethics and Personal Responsibility has implied that "substantial role" means
13 "direct role." *See* Formal Op. No. 39, at 6. Kistler's role in representing Plaintiff in the Desert
14 Entities bankruptcy case was "direct." Kistler represented Gonzales at a deposition and
15 participated in strategy meetings concerning all of Gonzales's cases. Whether Kistler currently
16 remembers participating in the deposition is not at issue, but only whether his participation (only
17 his memory of which, not the fact of which, Kistler appears to question) constituted substantial
18 legal representation. He directly participated in Gonzales's representation. His claim that he
19 does not believe his participation in the deposition exposed him to any client confidences is not
20 credible both on its face and because he simultaneously claims he does not remember what
21 transpired at the deposition.
22     Also, it appears undisputed that Hutchison and Steffan did not give Plaintiff written
23 notice of the potential conflict before undertaking representation of Defendants. Although the
24 parties do not appear to dispute that Kistler notified Gonzales's counsel by telephone, the Court
25 has been unable to find any authority indicating that the rule can be satisfied without a writing.

Even assuming a verbal communication could qualify under appropriate circumstances, however, because Kistler's role was substantial, screening is not permitted. Hutchison & Steffan is therefore disqualified from representing Defendants in the present cases under Rule 1.10(e).

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Disqualify (ECF No. 112) is GRANTED.

IT IS SO ORDERED.

Dated this 31st day of August, 2016.

_____
ROBERT C. JONES
United States District Judge