# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| TOM GONZALES,<br><br>        Plaintiff,<br><br>vs.<br><br>SHOTGUN NEVADA INVESTMENTS, LLC et al.,<br><br>        Defendants. | 2:13-cv-00931-RCJ-VPC |
| TOM GONZALES,<br><br>        Plaintiff,<br><br>vs.<br><br>DESERT LAND, LLC et al.,<br><br>        Defendants. | 2:15-cv-00915-RCJ-VPC<br><br>**ORDER** |

These consolidated cases arises out of the alleged breach of a settlement agreement that was part of a confirmation order in a Chapter 11 bankruptcy action. Pending before the Court are two motions in limine.

**I.    FACTS AND PROCEDURAL HISTORY**

Case No. 2:13-cv-931 is the Lead Case and the second action in this Court by Plaintiff Tom Gonzales concerning his entitlement to a fee under a confirmation order the undersigned

entered years ago while sitting as a bankruptcy judge.

### A. The Previous (First) Case

On December 7, 2000, Plaintiff loaned $41.5 million to Desert Land, LLC and Desert Oasis Apartments, LLC to finance their acquisition and/or development of land ("Parcel A") in Las Vegas, Nevada. The loan was secured by a deed of trust. On May 31, 2002, Desert Land and Desert Oasis Apartments, as well as Desert Ranch, LLC (collectively, the "Desert Entities"), each filed for bankruptcy, and the undersigned administered those bankruptcies while sitting as a bankruptcy judge. The court confirmed the Second Amended Plan of Reorganization ("the Plan"), and the confirmation order included a finding that a settlement had been reached under which Gonzales would extinguish his note and reconvey his deed of trust, Gonzales and another party would convey their fractional interests in Parcel A to Desert Land so that Desert Land would own 100% of Parcel A, Gonzales would receive Desert Ranch's 65% interest in another property, and Gonzales would receive $10 million if Parcel A were sold or transferred after 90 days ("the Parcel A Transfer Fee"). Gonzales appealed the confirmation order, and the Bankruptcy Appellate Panel affirmed, except as to a provision subordinating Gonzales's interest in the Parcel A Transfer Fee to up to $45 million in financing.

In 2011, Gonzales sued Desert Land, Desert Oasis Apartments, Desert Oasis Investments, LLC, Specialty Trust, Specialty Strategic Financing Fund, LP, Eagle Mortgage Co., and Wells Fargo (as trustee for a mortgage-backed security) in state court for: (1) declaratory judgment that a transfer of Parcel A had occurred entitling him to the Parcel A Transfer Fee; (2) declaratory judgment that the lender defendants in that action knew of the bankruptcy proceedings and the requirement of the Parcel A Transfer Fee; (3) breach of contract; (4) breach of the implied covenant of good faith and fair dealing; (5) judicial foreclosure against Parcel A under Nevada law; and (6) injunctive relief. Defendants removed that case to the Bankruptcy Court. The Bankruptcy Court recommended withdrawal of the reference because the undersigned had issued

the underlying confirmation order while sitting as a bankruptcy judge. One or more parties so moved, and the Court granted the motion. In that case, *Gonzales v. Desert Land, LLC*, 3:11-cv-613, the Court dismissed the second and fifth causes of action and later granted certain defendants' counter-motion for summary judgment as against the remaining causes of action. Plaintiff asked the Court to reconsider and to clarify which, if any, of its claims remained, and defendants asked the Court to certify its summary judgment order under Rule 54(b) and to enter judgment in their favor on all claims. The Court denied the motion to reconsider, clarified that it had intended to rule on all claims, and certified the summary judgment order for immediate appeal. Defendants submitted a proposed judgment, which the Court signed, and Plaintiff asked the Court to enjoin defendants from further encumbering Parcel A with loans or mechanics liens until the Court of Appeals ruled, a motion the Court denied. The Court of Appeals affirmed, ruling that the Parcel A Transfer Fee had not been triggered based on the allegations in that case, and that Plaintiff had no lien against Parcel A.

### B. The Lead (Second) Case

In the Lead Case, Case No. 2:13-cv-931, also removed from state court, Plaintiff recounts the confirmation order and the Parcel A Transfer Fee. (*See* Compl. ¶¶ 10–14, ECF No. 1, at 11 in Case No. 2:13-cv-931). Plaintiff also recounts the history of the previous case. (*See id.* ¶¶ 17–21). Plaintiff alleges that Defendant Shotgun Nevada Investments, LLC ("Shotgun") began making loans to the Desert Entities for the development of Parcel A between 2012 and January 2013 despite its awareness of the confirmation order and Parcel A Transfer Fee provision therein. (*See id.* ¶¶ 22–23). Plaintiff sued Shotgun, Shotgun Creek Las Vegas, LLC, Shotgun Creek Investments, LLC, and Wayne M. Perry for intentional interference with contract, intentional interference with prospective economic advantage, and unjust enrichment based upon their having provided financing to the Desert Entities to develop Parcel A. Defendants removed and moved for summary judgment, arguing that the preclusion of certain issues decided in the

1  '613 Case necessarily prevented Plaintiffs from prevailing in the present case. The Court granted

2  that motion as a motion to dismiss, with leave to amend.

3        Plaintiff filed the Amended Complaint ("AC"). (*See* Am. Compl., ECF No. 28 in Case

4  No. 2:13-cv-931). Plaintiff alleges that the confirmation order permitted Parcel A to be used as

5  collateral for up to $25,000,000 in deeds of trust against Parcel A itself or as collateral for a

6  mortgage securing the purchase of real property subject to the FLT Option if the proceeds were

7  used only for the purchase of that real property, but that any encumbrance of Parcel A outside of

8  these parameters would trigger the Parcel A Transfer Fee. (*See id.* ¶¶ 15–16). Various Shotgun

9  entities made additional loans to the Desert Entities in 2012 and 2013 "related to the

10  development of Parcel A." (*Id.* ¶¶ 25–26). Multiple Shotgun entities have also invested in

11  SkyVue Las Vegas, LLC ("SkyVue"), the company that owns the entities that own Parcel A. (*Id.*

12  ¶ 27). Plaintiff alleges that the reason Perry, the principal of the Shotgun entities, did not

13  document his $10 million investment was to "avoid evidence of a transfer," and thus the

14  triggering of the Parcel A Transfer Fee. (*See id.* ¶ 29).

15        Defendants moved for summary judgment, and Plaintiff moved to compel discovery. The

16  Court struck the conspiracy and declaratory judgment claims from the AC, because Plaintiff had

17  no leave to add them. The Court otherwise denied the motion for summary judgment and

18  granted the motion to compel discovery, although the Court noted that the intentional

19  interference with prospective economic advantage claim (but not the intentional interference with

20  contractual relations claim) was legally insufficient. Defendants moved for summary judgment

21  after further discovery and filed a motion in limine. The Court denied both motions as well as a

22  motion to reconsider but granted a motion to strike the untimely jury demand.

23      **C.**    **The Member (Third) Case**

24        In the Member Case, Case No. 2:15-cv-915, Plaintiff sued the Desert Entities, SkyVue

25  Las Vegas, LLC, Howard Bulloch, and David Gaffin variously in this Court for breach of

1  contract, breach of the covenant of good faith and fair dealing, and conspiracy, making a timely
2  jury demand.  The Court asked the parties to show cause why both cases should not be tried to a
3  jury.  After a hearing, the Court ruled that the '931 Case will be tried to the Court but the '915
4  Case will simultaneously be tried to a jury.  Plaintiff has filed two motions in limine.

## II.	LEGAL STANDARDS

A motion in limine is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence.  Black's Law Dictionary defines it as "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial.  Typically, a party makes this motion when it believes that mere mention of the evidence during trial would be highly prejudicial and could not be remedied by an instruction to disregard." *Black's Law Dictionary* 1171 (10th ed. 2014).  Although the Federal Rules of Evidence do not explicitly authorize a motion in limine, the Supreme Court has held that trial judges are authorized to rule on motions in limine pursuant to their authority to manage trials. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c) (providing that trial should be conducted so as to "prevent inadmissible evidence from being suggested to the jury by any means")).

Judges have broad discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002).  However, a motion in limine should not be used to resolve factual disputes or weigh evidence. *See C&E Servs., Inc., v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008).  To exclude evidence on a motion in limine "the evidence must be inadmissible on all potential grounds." *E.g.*, *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).  "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993).  This is because although rulings on motions in limine may save "time, costs, effort and preparation, a court is almost always better situated during the actual trial

to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1219 (D. Kan. 2007).

In limine rulings are preliminary and therefore "are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

## III.  ANALYSIS

### A.  Motion No. 136

Plaintiff asks the Court to exclude arguments at trial that there is no limitation on permitted financing against Parcel A. The Plan originally made Plaintiff's right to payment of the Parcel A Transfer Fee subordinate to "Parcel A Permitted Financing" of no more than $45 million. The Bankruptcy Appellate Panel reversed as to the subordination issue, noting that there was nothing in the record indicating the $45 million figure and that although there was discussion in the record of the $25 million figure, the parties had never agreed to any subordination. (*See* Mem. Op. 13 & n.7, ECF No. 63 in BAP Case No. 03-1255).

The Court later determined in ruling on a motion to dismiss in the Previous Case that all parties had agreed that one trigger of a transfer under the Plan was if more than $25 million in financing became outstanding against Parcel A at any time. That is based on the definition of "Parcel A Permitted Financing" found in Schedule 1 to the Settlement Agreement, attached as Exhibit 4 to the Complaint in the Member Case. That agreement was clearly made by the parties via the Plan and not unilaterally imposed by the Court in issuing the confirmation order, as was the $45 million subordination clause that the Bankruptcy Appellate Panel vacated. The Plan

1  includes the $25 million Parcel A Permitted Financing. (*See* Plan 6:28–7:21 (directly defining

2  "Parcel A Permitted Financing" consistently with Schedule 1 to the Settlement Agreement and

3  separately binding the parties to the terms thereof), ECF No. 1-4 in Case No. 2:15-cv-915).

4  Indeed, the Court granted a motion to dismiss certain parties in the Previous Case based on that

5  understanding.  Plaintiff argues that under the doctrine of collateral estoppel, Defendants cannot

6  now argue that there can be more than $25 million in financing against Parcel A without

7  triggering Plaintiff's right to the Parcel A Transfer Fee.

8       The Court grants the motion.  The $25 million trigger was and remains the view of the

9  Court regardless of principles of estoppel.  The Court has so ruled in granting a previous motion

10 to dismiss in a related case and has not changed its mind in the interim.  It therefore does not

11 matter whether any remaining Defendants currently disputing the $25 million trigger previously

12 benefitted from arguments in favor of it here or elsewhere.

13      **B.**     **Motion No. 135**

14      Plaintiff asks the Court to exclude as irrelevant and/or substantially more prejudicial than

15 probative any evidence or argumentation concerning Plaintiff's proceeds from the sale of Parcels

16 B, C, or D.  The Court agrees that any such evidence would be irrelevant and purely prejudicial.

17 *See* Fed. R. Evid. 401–403.  Amounts received as payment for the sale of Parcels B, C, and D

18 have no tendency to make the triggering of the Parcel A Transfer Fee more or less probable,

19 anymore so than evidence of payment for the sale of unrelated land in some other state would be.

20 Giving the jury the "full picture" or "valuable context" in this way, as Defendants argue in

21 response, would only serve to prejudice the jury against Plaintiff by introducing evidence of his

22 wealth without adding any facts relevant to whether the Parcel A Transfer Fee has been triggered.

23 ///

24 ///

25 ///

## CONCLUSION

IT IS HEREBY ORDERED that the Motions in Limine (ECF Nos. 135, 136) are GRANTED.

IT IS SO ORDERED.

DATED: This 17th day of February, 2017.

_____
ROBERT C. JONES
United States District Judge