# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| TOM GONZALES,<br><br>      Plaintiff,<br><br>vs.<br><br>DESERT LAND, LLC et al.,<br><br>      Defendants. | 2:15-cv-00915-RCJ-VPC |
| TOM GONZALES,<br><br>      Plaintiff,<br><br>vs.<br><br>SHOTGUN NEVADA INVESTMENTS, LLC et al.,<br><br>      Defendants. | 2:13-cv-00931-RCJ-VPC<br><br>**ORDER** |

This case is the third action in this Court by Plaintiff Tom Gonzales concerning his entitlement to a fee under a plan of confirmation the undersigned entered years ago while sitting as a bankruptcy judge. The Court has held a bench trial and ruled in favor of Plaintiff. Several motions are pending concerning Plaintiff's proposed form of judgment.

///

///

## I. PROCEDURAL HISTORY

### A. The Desert Land Bankruptcies

On December 7, 2000, Plaintiff loaned $41.5 million to Desert Land, LLC and Desert Oasis Apartments, LLC to finance their acquisition and development of land in Las Vegas, Nevada. The loan was secured by a deed of trust. On May 31, 2002, Desert Land, Desert Oasis Apartments, and Desert Ranch, LLC (collectively, "the Desert Entities") filed for bankruptcy, and the undersigned jointly administered those bankruptcies while sitting as a bankruptcy judge. The bankruptcy court confirmed the Second Amended Plan of Reorganization ("the Plan"), and the resulting confirmation order ("the Confirmation Order") included a finding that a settlement had been reached ("the Settlement Agreement," which, along with the Plan, was attached to the Confirmation Order) under which Gonzales would extinguish his note and reconvey his deed of trust against Parcel A, Gonzales and another party would convey their interests in Parcel A to Desert Land and/or Desert Oasis Apartments so that those entities would own 100% of Parcel A, Gonzales would receive Desert Ranch's 65% interest in another property, and Gonzales would receive $7.5 million or $10 million if Parcel A were sold or otherwise transferred, depending on the date of transfer ("the Parcel A Transfer Fee"). Gonzales appealed, and the Bankruptcy Appellate Panel affirmed except as to a provision subordinating Gonzales's interest in the Parcel A Transfer Fee to up to $45 million in financing. The Court of Appeals affirmed.

### B. The First Action

In 2011, Gonzales sued the Desert Entities, Specialty Trust, Specialty Strategic Financing Fund, LP, Eagle Mortgage Co., and Wells Fargo in state court for: (1) declaratory judgment that a transfer of Parcel A had occurred entitling him to the Parcel A Transfer Fee; (2) declaratory judgment that the lender defendants in that action knew of the bankruptcy proceedings and the

requirement of the Parcel A Transfer Fee; (3) breach of contract; (4) breach of the implied covenant of good faith and fair dealing; (5) judicial foreclosure against Parcel A; and (6) injunctive relief. The defendants removed the case to the bankruptcy court, which suggested withdrawal of the reference because the undersigned had issued the Confirmation Order while sitting as a bankruptcy judge. One or more parties so moved, and the Court granted the motion. In that case, No. 3:11-cv-613, the Court ruled that the Parcel A Transfer Fee had not been triggered based on the allegations made there, and that Gonzales had no lien against Parcel A. The Court of Appeals affirmed.

### C. The Second Action

In the Second Action, No. 2:13-cv-931, also removed from state court, Gonzales alleged that Shotgun Investments Nevada, LLC had made various loans to the Desert Entities for the development of Parcel A in 2012 and 2013 despite its awareness of the Plan and the Parcel A Transfer Fee provision therein. Plaintiff sued Shotgun Investments Nevada (erroneously named as "Shotgun Nevada Investments, LLC"), Shotgun Creek Las Vegas, LLC, Shotgun Creek Investments, LLC (collectively, "the Shotgun Entities"), and Wayne M. Perry for intentional interference with contractual relations, intentional interference with prospective economic advantage, and unjust enrichment. The defendants removed and moved for summary judgment, arguing that the preclusion of certain issues decided in the First Action controlled the Second Action. The Court granted that motion as a motion to dismiss, with leave to amend.

Gonzales amended, and the defendants moved for summary judgment. The Court struck conspiracy and declaratory judgment claims, because Gonzales had no leave to add them. The Court otherwise denied the motion but noted that the intentional interference with prospective economic advantage claim was legally insufficient. The defendants moved for summary

judgment after further discovery. The Court denied the motion and a motion to reconsider but granted a motion to strike the untimely jury demand. The sole claim remaining for the bench trial was for intentional interference with contractual relations. The parties settled during trial.

### D. The Third (Present) Action

In the present case, No. 2:15-cv-915, Gonzales sued the Desert Entities; SkyVue Las Vegas, LLC, Howard Bulloch, and David Gaffin in this Court for breach of contract, breach of the covenant of good faith and fair dealing, and conspiracy. The Court solicited summary judgment motions on contractual interpretation issues and ruled that: (1) Defendants were entitled to summary judgment against all claims except the claim for breach of contract; (2) Plaintiff was entitled to summary judgment on liability for breach of contract; and (3) Defendants were entitled to summary judgment on the issue of money damages. The Court ordered briefing on equitable remedies. After considering the various suggestions, the Court ruled that in the event of a sale, transfer, or other conveyance of Parcel A (or any part of it), the proceeds were to be applied as follows: first, to pay the first $25 million in principal secured by Parcel A (or any part of it, and only to the extent the relevant obligation was incurred before the date of breach) plus interest accruing on any such principal until the date of breach; second, to pay the $10 million Parcel A Transfer Fee plus interest accruing from the date of breach; and third, to pay any remaining encumbrances in accordance with law and contract. The Court ordered Plaintiff to submit a proposed judgment, and he has done so. Defendants have objected to the proposed form of judgment, and the Shotgun Entities have moved to intervene.

## II. DISCUSSION

The proposed judgment reads in relevant part:

> In the event of a sale, transfer or conveyance of Parcel A (or any part of it), the proceeds are to be applied as follows: first, to pay to the person/entity entitled

[to] the first $25 million in principal secured by Parcel A (or any part of it, and only to the extent the relevant obligation was incurred before the date of breach of June 11, 2012) plus interest accruing on any such principal until the date of breach of June 11, 2012; second, to pay to Tom Gonzales the $10 million Parcel A Transfer Fee plus interest accruing from the date of breach of June 11, 2012[]; and third, to pay any remaining encumbrances in accordance with law and contract.

(Proposed J. 2:20–3:2, ECF No. 20). The proposed judgment is materially identical to the Court's instructions, except that it specifies the date of breach. The Court has not yet entered judgment. The Desert Entities have asked the Court to reconsider. They argue that the subordination of that amount of their liens exceeding the Parcel A Permitted Financing ($25 million) to the Parcel A Transfer Fee is inconsistent with the Court's previous rulings that: (1) the Parcel A Transfer Fee is not yet due; and (2) the Parcel A Transfer Fee does not give rise to an equitable lien against Parcel A.

Although the Court does not agree with most of the Desert Entities' reasoning, it does believe it must reconsider the remedy. First, it is true that the Parcel A Transfer Fee is not yet due under the Confirmation Order, because no Parcel A Transfer has occurred, and although a Parcel A Equity Transfer has occurred, it did not result in any Net Proceeds. The Court disagrees that subordination of excess liens to the Parcel A Transfer Fee would imply that the Parcel A Transfer Fee is immediately due, however. A readjustment of priority would simply mean that in the case of a foreclosure (whether by the Shotgun Entities, by Gonzales after the Parcel A Transfer Fee later became due, or by some other entity), Gonzales would receive the Parcel A Transfer Fee after the first $25 million of liens against Parcel A were satisfied but before the remainder were. Second, it is true that the Parcel A Transfer Fee does not give rise to an equitable lien against Parcel A. The Court has so ruled, and the Court of Appeals has affirmed. The law of the case would therefore probably prevent the Court from reversing itself on that point even if the Court had changed its opinion, which it hasn't. The readjustment of

priorities, however, would create no immediate lien against Parcel A by virtue of the Parcel A Transfer Fee's readjusted priority—the Court's suggested remedy created a mere payment priority, not an enforceable lien—so such a ruling would not necessarily contradict the law of the case that there is no lien against Parcel A by virtue of the Parcel A Transfer Fee.

Still, the resubordination of the portion of the Shotgun Entities' lien against Parcel A that exceeds the Parcel A Permitted Financing—even if only in the form of a payment priority that does not permit Gonzales to foreclose—may be forbidden given the Court of Appeals' affirmation of the Bankruptcy Appellate Panel's ruling that the Bankruptcy Court erred when it subordinated (via the Confirmation Order) the Parcel A Transfer Fee to $45 million of financing without any agreement by the parties. *In re Desert Land, LLC*, No. 03-1255 (B.A.P. 9th Cir. Mar. 31, 2004). The Bankruptcy Appellate Panel noted that there was a reference in the record "to subordination of the Parcel 'A' Transfer Fee for up to $25 million," but that Gonzales had not actually agreed to subordinate the Parcel A Transfer Fee to any extent. The issue presented now is slightly different. The parties do not reargue whether the Parcel A Transfer Fee is subordinate to any financing, but whether, conversely, the Court may resubordinate some portion of the Shotgun Entities' liens against Parcel A to the Parcel A Transfer Fee. The Court of Appeals' previous opinion was issued in the context of a dispute over the Bankruptcy Court's power to include a term in the Confirmation Order that the parties had not agreed to: the subordination of the Parcel A Transfer Fee to some amount of financing. Similarly here, the parties have never agreed to subordinate any portion of liens against Parcel A to the Parcel A Transfer Fee. That is not the end of the matter, however, because the subordination proposed here would not be via an amendment to the Confirmation Order in the absence of an agreement by the parties—something the law of the case (and probably the law generally) prohibits—but rather via a civil judgment on

a legal claim of breach of contract. In other words, the Desert Entities' lack of agreement to subordinate their loans to the Parcel A Transfer Fee as a matter of federal bankruptcy law does not necessarily limit the available remedies for their breach of the Plan under Nevada law.

Nevertheless, the Court believes resubordination of the Shotgun Entities' liens to the Parcel A Transfer Fee is not permitted under Nevada law. Nevada law provides for the registration of civil judgments, e.g., for breach of contract, which can then be executed under Chapter 21 of the Nevada Revised Statutes. The Court finds it would be an error of state law to impose a remedy for breach of contract that would essentially permit a judgment creditor to advance his lien priority as against third parties beyond what would normally be permitted under Chapter 21.

The Court agrees that if it were to resubordinate some portion of liens against Parcel A to the Parcel A Transfer Fee, it would probably have to permit affected creditors to intervene, despite other factors counseling against intervention.[1] Movants argue the resubordination of their liens against Parcel A will negatively affect their interests. They claim to hold defaulted liens against Parcel A securing over $60 million. The subordination of the portion of their liens in excess of $25 million to Plaintiff's Parcel A Transfer Fee could harm their interests if they were to follow through with foreclosure and Parcel A sold for less than approximately $70

---

[1] The motion to intervene could certainly have been more timely. Movants have been parties to the Second Action since 2013, the present action has been pending since 2015, and Movants have long known their interests in their liens against Parcel A were implicated. Also, the Desert Entities have well represented Movants' interests, forcefully defending the case even against Plaintiff's proposed equitable relief, where the only beneficiaries of the opposition were Movants. Furthermore, the Desert Entities and Movants were represented by the very same counsel (Mr. Schwartzer) until four months after the bench trial and three weeks after Movants filed the notice of default against Parcel A. Mr. Schwartzer was still counsel for Movants in the Second Action during the litigation of the motions for equitable remedies in the present Third Action.

million. That seems unlikely based on Greg Perry's (a principal of the Shotgun Entities) own deposition testimony, but the possibility would normally counsel in favor of permitting intervention so that Movants could at least argue the issue. The Court will not permit intervention, however. Because the Court will reconsider the remedy and not resubordinate Movants' liens against Parcel A, Movants can claim no threat to their interests.

The Court finds that it must award damages for the breach it has found. Although the Court previously ruled that no damages had yet been incurred due to the breach of the Parcel A Permitted Financing provision, the Court now reconsiders.

Contract damages serve to protect one or more of three interests of a promisee: expectation interests (putting the aggrieved party in the position he would be in had the breaching party fulfilled his duties under the contract, i.e., granting the aggrieved party the "benefit of the bargain"), reliance interests (putting the aggrieved party in the position he would be in had he never entered into the contract), and restitution interests (restoring to the aggrieved party whatever unrequited benefit he has conferred upon the breaching party). Restatement (Second) of Contracts § 344(a)–(c) (1981); *see also Dynalectric Co. of Nev., Inc. v. Clark & Sullivan Constructors, Inc.*, 255 P.3d 286, 289 & nn.4–6 (Nev. 2011) (citing *id.* and adopting the approach of the Restatement). An expectation measure of damages is appropriate here,[2] and Plaintiff has suffered damages due to the breach of the Parcel A Permitted Financing provision. The Court previously erred in finding otherwise. Under the Confirmation Order, Plaintiff

---

2 This is the "ordinar[y]" measure of damages. Restatement (Second) of Contracts § 344 cmt. a. A reliance measure of damages would be inappropriate here, and perhaps practically impossible to effectuate, because the Confirmation Order cannot now be unwound, which would be required to restore Gonzales to his previous position. A restitution measure of damages would also be inappropriate, because this case does not involve an unjust-enrichment-type situation where Plaintiff has provided services or property and is simply awaiting payment.

reasonably expected to be paid the Parcel A Transfer Fee before Parcel A was encumbered beyond $25 million. Movants' own actions in beginning foreclosure proceedings against Parcel A and their current claim that Parcel A is over-encumbered (contrary to Greg Perry's previous testimony) strengthens the Court's reconsidered finding that Gonzales has already incurred damages. The Court will therefore enter a money judgment in Plaintiff's favor. Plaintiff may then, if he wishes, register that judgment as a lien against any property of Defendants so subject under state law, and state law will govern the priority of such a lien. Defendants also argue that the Court should not award interest from the date of breach, but this argument is now moot given the Court's reconsideration of the remedy.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Intervene (ECF No. 23) is DENIED.

IT IS FURTHER ORDERED that the Motion to Reconsider (ECF No. 25) and the Motion to Reconsider (ECF No. 190 in Case No. 2:13-cv-931) are GRANTED IN PART and DENIED IN PART. The loans will not be resubordinated, nor will any lien in Plaintiff's favor be hereby established, but the Court will enter a money judgment in Plaintiff's favor.

IT IS FURTHER ORDERED that the Clerk shall enter a copy of this Order into the docket of Case No. 2:13-cv-931.

IT IS FURTHER ORDERED that Plaintiff shall SUBMIT a new proposed judgment consistent with this Order within fourteen (14) days.

IT IS SO ORDERED.

Dated this 27th day of March, 2018.

_____
ROBERT C. JONES
United States District Judges